IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-01538-PAB-MEH

AARON HERNANDEZ, an individual,

      Plaintiff,

v.

THE CITY AND COUNTY OF DENVER, a municipality,
OFFICER JAYME R. LARSON, in their individual capacity,
OFFICER VANCE JOHNSON, in their individual capacity,
SERGEANT MICHAEL O'NEILL, in their individual capacity,
DETECTIVE ASHLEY BOTELLO, in their individual capacity,

      Defendants.

---

**ORDER**

---

    This matter is before the Court on the City and County of Denver's Motion to

Dismiss [Docket No. 14]. Plaintiff responded, Docket No. 19, and the City and County of

Denver ("Denver") replied. Docket No. 21.

## I. BACKGROUND[1]

    On June 30, 2019, plaintiff was sitting in the passenger seat of a parked vehicle,

and his son was sitting in the driver's seat. Docket No. 4 at 2, ¶¶ 9–10. The vehicle

was in a church parking lot when police officers approached it. *Id.*, ¶ 9. Defendant

Michael O'Neill, a sergeant with the Denver Police Department ("Sergeant O'Neill"),

approached the vehicle on the driver's side. *Id.*, ¶ 11. Plaintiff's son had a "non-violent

---

[1] The Court assumes that the well-pled allegations in plaintiff's Amended
Complaint and Jury Demand [Docket No. 4] are true in considering this motion to
dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

warrant out for his arrest." *Id.* at 3, ¶ 12.  Sergeant O'Neill ordered plaintiff's son to step

out of the vehicle and arrested him without incident. *Id.*, ¶¶ 12–13.

As his son was taken into custody, plaintiff opened the passenger-side door of

the vehicle. *Id.*, ¶ 14.  When he did so, there were no officers near that side of the car,

and he had not been ordered to remain in the vehicle. *Id.*, ¶¶ 14, 16.  Plaintiff was not

suspected of any crime. *Id.*, ¶ 15.  Defendant Jayme R. Larson, a Denver police officer

("Officer Larson"), ran towards plaintiff as he was standing up from the passenger seat

of the vehicle. *Id.*, ¶¶ 17–18.  Officer Larson did not make any statements or issue any

commands, but grabbed plaintiff by both wrists and prevented plaintiff from moving. *Id.*,

¶¶ 19–20.  Officer Larson then arrested plaintiff. *Id.*, ¶ 21.  When plaintiff asked the

officers what he was under arrest for, he was told, "[w]e haven't figured that out yet." *Id.*

at 5, ¶ 36.

Plaintiff told Officer Larson he had "medical issues," had "previously had intestinal

surgery," and "suffered from severe sciatic pain." *Id.* at 4, ¶ 22.  Defendant Vance

Johnson, another Denver police officer ("Officer Johnson"), grabbed hold of plaintiff. *Id.*,

¶ 23.  At no point did plaintiff "attempt to flee, resist, or make any movements" that could

indicate that plaintiff was trying to harm the officers. *Id.*, ¶ 26.  Neither Officer Larson

nor Officer Johnson gave plaintiff any commands while he was in their control. *Id.*, ¶ 27.

While forced against his son's vehicle, Officer Larson struck plaintiff in the side of

his torso with a closed fist. *Id.*, ¶ 28.  At the same time, Officer Johnson struck plaintiff

with his elbow. *Id.*, ¶ 29.  Plaintiff immediately dropped to the ground. *Id.*, ¶ 30.

Sergeant O'Neill did not intervene. *Id.*, ¶ 31.  When plaintiff explained that he was in

pain due to his recent surgery and sciatic nerve pain, Officer Johnson responded, "[w]ell

now your face can hurt too!" *Id.* at 5, ¶ 32.  Officer Johnson then turned his body

camera off.  *Id.*  Plaintiff had to receive medical treatment for serious injuries to his face. *Id.*, ¶ 34.

The defendant officers charged plaintiff with two counts of felony assault on a peace officer, *id.*, ¶ 35; however, the Denver District Attorney's Office dropped these charges.  *Id.*, ¶ 38.

The Denver Police Department (the "Department" or "Denver Police") has not disciplined Officer Johnson, Officer Larson, or Sergeant O'Neill.  *Id.*, ¶ 39.  Sergeant O'Neill conducted a use of force investigation regarding plaintiff's arrest and found "[n]o areas of operational improvements."  *Id.*, ¶ 40.  Sergeant O'Neill's report also states that Officers Larson and Johnson "were recognized for displaying professionalism and restraint" and that "Officer Larson was further recognized for her calm, non-confrontational demeanor and attempt to de-escalate her initial interaction with [plaintiff]."  *Id.*  Detective Ashley Botello reviewed the use of force reports and body camera footage and "noted that everything in the report was accurate."  *Id.* at 6, ¶ 41.

Plaintiff brings four claims for relief under 42 U.S.C. § 1983 for (1) unconstitutional arrest under the Fourth Amendment against Officer Larson, Officer Johnson, and Sergeant O'Neill; (2) use of excessive force under the Fourth Amendment against Officer Larson, Officer Johnson, and Sergeant O'Neill; (3) malicious prosecution against Officer Larson, Officer Johnson, Sergeant O'Neill, and Detective Botello; and (4) municipal liability against Denver for a custom or widespread practice of using excessive force.  *Id.* at 6–27, ¶¶ 42–100.  Denver moves to dismiss the claim against it pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See generally* Docket No. 14.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege

enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Twombly, 550 U.S. at 555) (alterations omitted).  However, a plaintiff still must provide "supporting factual averments" with her allegations.  *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)).  The Court need not accept conclusory allegations.  *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting

4

all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III.  ANALYSIS

In his complaint, plaintiff alleges that Denver has a "long history and custom of using excessive force."  Docket No. 4 at 13, ¶ 83.  According to plaintiff, in January 2017, the Office of the Independent Monitor ("OIM") noted deficiencies in the Department's draft "Use of Force Policy," including "vague and poorly defined key provisions, lack of clarity for the overall standard for when force may be used, less restrictive standards" compared to other cities' police departments, and "lack of adherence to national standards, including the definition of deadly force."  *Id.*, ¶ 85. Plaintiff also purports to incorporate by reference a complaint filed in Case No. 20-cv-02198-LTB, *Estate of Naphtali Israel, et al. v. City and County of Denver, et al.*, and lists numerous examples of "claims and lawsuits against [Denver] and/or its police officers . . . in which [Denver] either paid settlements or had verdicts against it based on allegations of the use of unnecessary and excessive force against individuals in non-violent situations."  *Id.*, ¶ 86.

Local governments may not be sued under 42 U.S.C. § 1983 on a theory of *respondeat superior.  Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978). Instead, local governing bodies can be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Id.* at 690 (footnote omitted).  "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible

5

under § 1983." *Id.* at 694.

In order to state a claim for municipal liability under § 1983 for the actions of a municipal employee, a party must allege sufficient facts to demonstrate that it is plausible (1) that the municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). A municipal policy or custom can take the form of

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted).

A plaintiff must also demonstrate "a direct causal link between the policy or custom and the injury alleged." *Id.* at 788 (internal quotation marks omitted). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown*, 520 U.S. at 405. "The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (internal quotation marks omitted).

6

Finally, "at least for claims of inadequate hiring, training, or other supervisory practices, a plaintiff 'must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences.'" *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)) (internal quotation omitted). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Brown*, 520 U.S. at 410) (internal quotation marks and brackets omitted), as "[a] less stringent standard of fault for a failure-to-train claim 'would result in *de facto respondeat superior* liability on municipalities,'" *id.* at 62 (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). "In most instances, notice can be established by proving the existence of a pattern of tortious conduct." *Id.* Deliberate indifference "may be found absent a pattern of unconstitutional behavior" only in "a 'narrow range of circumstances'" where "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction." *Id.* at 1307–08 (quoting *Brown*, 520 U.S. at 409). Thus, in order to state a claim under *Monell*, a plaintiff must allege an "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider*, 717 F.3d at 769.

## A.  Constitutional Violation

To maintain a municipal liability claim, a plaintiff must first show that a municipal

7

employee violated the plaintiff's constitutional rights.  *See Jiron*, 392 F.3d 419.  Denver "does not now challenge the viability of [plaintiff's] excessive force claim."  Docket No. 14 at 3 n.1.  For the purposes of resolving Denver's motion to dismiss, therefore, the Court assumes that plaintiff has adequately pled a constitutional violation.

### B.  Municipal Policy or Custom

A plaintiff must also show that a municipal policy or custom was the moving force behind the constitutional deprivation.  *See Jiron*, 392 F.3d at 419.  Denver argues that plaintiff's *Monell* claim against must be dismissed because plaintiff's allegations "are nothing more than 'mere labels and conclusions and a formulaic recitation of the elements of a cause of action,'" which is insufficient.  Docket No. 14 at 1 (quoting *Waller*, 932 F.3d at 1282 (internal quotation omitted)).  In particular, Denver argues that plaintiff cannot show any of the three elements of a § 1983 municipal liability claim, namely, the existence of an official policy or custom, that a policy or custom caused the constitutional violation, or that "Denver acted with deliberate indifference."  *Id.* at 5–14.

Plaintiff's response asserts generally that Denver has a pattern of "arresting individuals without probable cause and, when doing so, exerting excessive, unnecessary, and unlawful force."  Docket No. 19 at 4.  Plaintiff argues that Denver "consciously and continuously chooses not to provide proper training" to prevent constitutional violations and then fails to discipline officers.  *Id.*  In particular, plaintiff highlights (1) lawsuits "in which Denver Police Department used excessive force," (2) the 2017 OIM report, and (3) Sergeant O'Neill's use of force report and Detective Botello's review.  *Id.* at 4–10.  Plaintiff also argues that he has sufficiently pled that Denver has "maintained a persistent and widespread practice" of its unconstitutional conduct and that Denver's "custom and failure to adequately train" police officers

caused plaintiff's injuries and damages.  *Id.* at 10–12.

The Court construes plaintiff's arguments to be that the amended complaint adequately alleges a policy of Fourth Amendment violations because (1) Denver has a widespread practice of tolerating police officers' use of excessive force, as evidenced by incidents described in the complaint and (2) Denver has a policy of failing to train its officers, which causes the officers to use excessive force as in plaintiff's case.[2]

### 1.  Informal Custom Amounting to a Widespread Practice

Municipalities may "incur liability when they adopt unconstitutional 'longstanding practice[s] or custom[s]' that become 'standard operating procedure[s].'"  *Murphy v. City of Tulsa*, 950 F.3d 641, 649 (10th Cir. 2019) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).  "In attempting to prove the existence of such a continuing, persistent and widespread custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way."  *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (quotations omitted).   Plaintiff's complaint purports to incorporate by reference a complaint filed in Case No. 20-cv-02198-LTB and describes 50 "incidents" of interactions between

---

[2] Plaintiff does not appear to advance a ratification theory of liability.  Plaintiff alleges that Denver has failed to discipline or even acknowledge its alleged policy of using excessive force. *See, e.g.*, Docket No. 4 at 25–26, ¶ 90–94 (describing a "code of silence," cover-ups of violations, and a refusal to discipline unreasonable conduct). However, Denver's motion addresses plaintiff's allegations of Denver's informal custom amounting to a widespread practice and Denver's failure to train or supervise police officers. *See* Docket No. 14 at 5–11.  In response, plaintiff addresses the issue of discipline in the context of the Department's alleged failure to train and supervise officers, *see* Docket No. 19 at 4, not supervisors' ratification, which is a separate theory of municipal liability that is not referred to in the amended complaint.  *See Bryson*, 627 F.3d at 788–90; *see also Sexton v. City of Colo. Springs*, 530 F. Supp. 3d 1044, 1069 (D. Colo. 2021) (noting that ratification is more than acquiescence, and a mere failure to discipline does not amount to ratification).  The Court, therefore, considers whether plaintiff has plausibly alleged a widespread practice or a failure to train or supervise.

individuals and law enforcement in Denver.  Docket No. 4 at 13–25, ¶ 86.  Plaintiff,

however, may not "incorporate" a pleading filed in another case.  Federal Rule of Civil

Procedure 10(c), which addresses the process of "adoption by reference," provides, "[a]

statement in a pleading may be adopted by reference elsewhere in the same pleading

or in any other pleading or motion."  Courts interpreting Rule 10(c) have held that

"allegations in pleadings in another action, even if between the same parties, cannot be

incorporated by reference."  *See* Wright & Miller, 5A *Fed. Prac. & Proc. Civ.* § 1326 (4th

ed.) (citing cases); *Macias v. N.M. Dep't of Lab.*, 300 F.R.D. 529, 562 (D.N.M. 2014)

(explaining that, for Rule 10(c), "(i) the secondary document must be a pleading – a

complaint, cross-complaint, answer, or reply . . . ; (ii) the primary and secondary

documents must be filed in the same case – referencing a pleading from a different case

is impermissible, even if the two cases involve the same parties . . . ; and (iii) a party

may not incorporate district court pleadings by reference in an appellate court" (citations

omitted)).  Accordingly, the Court only considers the alleged incidents that plaintiff

describes in the amended complaint in this action.  Forty-four of these incidents involved

Denver police officers.  *Id.*[3]  All but one of the 50 incidents occurred before 2019, which

is when plaintiff's alleged constitutional violation took place.  *Id.* [4]  The Court must

---

[3] Some of the incidents occurred at jails or prisons, and plaintiff concedes that some of the incidents involved employees of the Denver Sheriff Department.  *See* Docket No. 19 at 5 n.1.  The Court does not consider these incidents. *Cf. Waller*, 932 F.3d at 1286 ("[W]e disregard the . . . allegations regarding Denver police officers, who are employed by the Denver Police Department rather than the separate Denver Sheriff Department.  These allegations . . . would not be relevant" in a *Monell* claim against Denver for actions by the Denver Sheriff Department.).

[4] Many of the incidents that plaintiff mentions were resolved by settlement.  *See id.* at 13–25, ¶ 86.  Some courts have held that settlements are "impertinent and have no bearing on [a] *Monell* claim."  *See, e.g.*, *Minor v. Cnty. of L.A.*, 2015 WL 13711269, at *2–3 (C.D. Cal. Sept. 23, 2015) ("Unlike a jury verdict, a settlement . . . does not

consider which of these alleged incidents are sufficiently similar to the facts of this case to constitute a municipal policy or custom of unprovoked use of excessive force. *See Sexton*, 530 F. Supp. 3d at 1069; *Carney*, 534 F.3d at 1274.

Plaintiff does not provide factual detail for many of the allegedly similar instances of Denver police officers' use of excessive force. *See, e.g.*, Docket No. 4 at 14, ¶ 86(b) ("In 2015, Denver Police shot and killed Paul Castaway with little intervention to deescalate the situation. As custom, the officer involved was not prosecuted."); *id.* at 19, ¶ 86(z) ("In 2010, Denver Police officers jumped Chad Forte in his apartment building leaving him with facial injuries. Denver settled this case for $22,500."); *id.* at 20, ¶ 86(dd) ("In 2010, Denver Police beat Eric Winfield causing chipped teeth, scars, and nerve damage in his hands."); *id.* at ¶ 86(gg) ("In 2009, Alberto Romero was killed by Denver Police after he was repeatedly tased and beat when arrested wearing only boxer shorts."). Other incidents, including the ones noted above, bear little or no similarity to the facts of this case. *See, e.g.*, *id.* at 14, ¶ 86(c) ("In 2015, Denver Police shot and killed Jessica Hernandez who was in a vehicle reported stolen with other teens in the vehicle – there were no weapons present. The officers involved all shot at the vehicle eight times and were not charged."); *id.*, ¶ 86(d) ("In 2015, Denver Police shot Sharod

---

constitute a finding of liability or an admission of misconduct. Liability and misconduct should not be inferred from a settlement."). Courts in this District, however, have held that "[t]he outcome of a[] lawsuit[] is not relevant" on a motion to dismiss a *Monell* claim because the court takes the allegations as true to determine if the allegations could "plausibly demonstrate the existence of an informal custom or practice that resulted" in a constitutional violation, and, if they are, the allegations are sufficient to state a *Monell* claim." *See Estate of Valverde v. Dodge*, No. 16-cv-1703-MSK-MEH, 2017 WL 3530282, at *4 (D. Colo. Aug. 17, 2017); *Thomas v. City of Aurora*, No. 20-cv-03308-LTB-NYW, 2021 WL 5810742, at *16 (D. Colo. Dec. 7, 2021) (citing *Valverde*); *Pittman v. City of Aurora*, No. 19-cv-01947-PAB-NRN, 2020 WL 6586659, at *11 (D. Colo. Oct. 23, 2020) (citing *Valverde*), *report and recommendation adopted*, 2020 WL 6585841 (D. Colo. Nov. 10, 2020).

Kindell during a traffic stop in which Denver Police forced Mr. Kindell out of the vehicle. Denver Police shot Mr. Kindell as he fled unarmed."); *id.*, ¶ 86(e) ("In 2014, Denver Police shot Carlos Jurdo through a vehicle's window after a pursuit."); *id.*, ¶ 86(f) ("In 2014, Denver Police shot Joseph Valverde during a sting operation.  Upon disarming himself and obeying commands, Denver Police shot and killed Mr. Valverde while his hands were raised in the air."); *id.* at 15, ¶ 86(h) ("In 2015, Altagracia Medina Valencia filed a lawsuit on behalf of her deceased husband who Denver Police shot and killed after they were called for a self-inflicted knife wound.  Officers tased Mr. Valencia-Lopez and he dropped the knife then shot him in front of his entire family.").  These dissimilar incidents do not support plaintiff's municipal liability claim because they cannot establish a pattern of sufficiently similar constitutional violations.  *See, e.g.*, *Waller*, 932 F.3d at 1287–90 (finding that prior incidents of excessive force against civilians on the street were too different from claim brought for excessive force by restrained inmate to be "similar prior incident[s]" for purposes of determining widespread practice of excessive force); *Carney*, 534 F.3d at 1274 (a plaintiff must show sufficiently similar incidents "suggesting that similarly situated individuals were mistreated by the municipality in a similar way"); *Sexton*, 530 F. Supp. 3d at 1070.

Some of the incidents, however, are more detailed and more similar.  First, plaintiff alleges that, in 2016, officers "tased and beat a homeless man, Gregory Heard, who was at the time complying with officers' commands."  Docket No. 4 at 17, ¶ 86(q). According to plaintiff, an officer pushed Mr. Heard to the ground and shoved his face into the dirt; then the officer and a supervisor who was at the scene prepared a false use of force report.  *Id.*  The Department concluded that the officer's conduct was "consistent with the policy of the [D]epartment."  *Id.*  Second, plaintiff alleges that, in 2012, officers

beat Philip White, a 77-year-old blind man, at a bus station and slammed his head into a machine. *Id.* at 17–18, ¶ 86(u).  According to plaintiff, the Department concluded that the officer did not violate policy or use excessive force; however, a jury found that officer had used excessive force. *Id.*  Third, plaintiff alleges that, in 2009, an officer "struck Danvis Smith in the face through the window of Mr. Smith's vehicle" and then "pulled Mr. Smith out the vehicle and handcuffed him in position that caused a torn rotator cuff, torn bicep tendon, and caused chronic back pain." *Id.* at 21, ¶ 86(hh).  Fourth, plaintiff alleges that, in 2006, Hirut Berhanmeskel was slammed against a wall and had her arm twisted to the point of her wrist breaking after she cried about her inability to pay a parking ticket. *Id.* at 23, ¶ 86(tt).  Based on the facts that plaintiff has provided, which the Court assumes to be true, each of these incidents was unprovoked and none involved any illegal activity or suspicion of wrongdoing by the alleged victims.

Although the Court views the well-pled factual allegations in the light most favorable to plaintiff, plaintiff's allegations of four similar incidents over a 13-year period are not sufficient to permit an inference of an informal custom amounting to a widespread practice that is "so permanent and well settled as to constitute a custom or usage with the force of law." *See Bryson*, 627 F.3d at 788.  While the incidents have broad similarity, the excessive force arose in different circumstances. *See* Gregory Heard (long time complying with officer commands); Philip White (nature of pre-force encounter not described in complaint); Danvis Smith (same); Hirut Berhanmeskel (crying over inability to pay parking ticket).  None are similar to a passenger exiting a vehicle simultaneously with the arrest of the driver.

In addition, plaintiff provides no authority on the number of similar incidents over a particular time period that are needed to show a widespread practice.  Although no set

number is required, *see, e.g.*, *Sexton*, 530 F. Supp. 3d at 1070 (citing *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015)), courts have noted that, where the misconduct is unique, a plaintiff does not need to allege as many similar incidents.  *See id.*  On the other hand, where the misconduct is not unique, as here, a plaintiff must allege more incidents.

Although some courts have held that three or more incidents are sufficient to state this type of *Monell* claim, in those cases, the similar incidents shared distinctive facts or occurred over a shorter time period.  For instance, in *Sekerak v. City & Cnty. of Denver*, 1 F. Supp. 2d 1191, 1199 (D. Colo. 1998), the court found the fact of similar retaliatory incidents against three other individuals was sufficient to state a claim, but noted that the claim "hangs by a thin reed."  *Id.*  However, in *Sekerak*, the alleged misconduct was more distinctive than in this case.  In that case, the plaintiff, a city employee, alleged that her First and Fourteenth Amendment rights were violated when she was retaliated against for supporting a non-incumbent mayoral candidate.  *Id.* at 1194, 1197–99.  In *Valverde*, the court found that three examples of excessive force could plausibly demonstrate the existence of an informal custom or practice that resulted in the use of excessive force.  2017 WL 3530282, at *4.  However, in that case, the allegedly similar incidents of excessive force all occurred within two years of each other and the plaintiff's complaint.  *See id.* (citing Case No. 16-cv-01703-MSK-MEH, Docket No. 27 at 8–9, ¶ 34).  The four allegedly similar incidents that plaintiff has identified in this case occurred over the course of 13 years and the most recent incident ocurred three years before the events in this case.[5]  While, "at the pleading stage, the

_____

[5] Denver attempts to distinguish *Valverde* because the Tenth Circuit ultimately found no constitutional violation.  Docket No. 14 at 8 (citing *Est. of Valverde v. Dodge*,

existence of a *Monell* policy is a 'conclusion' to be built up to, rather than a 'fact' to be baldly asserted," *Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1206 (D. Colo. 2020) (quoting *Griego*, 100 F. Supp. 3d at 1215), and although plaintiff has not "baldly asserted" a *Monell* claim, he has not plausibly pled a practice so "permanent and well settled as to constitute a custom or usage with the force of law," *see Bryson*, 627 F.3d at 788, such that the Court can infer "the existence of . . . a continuing, persistent and widespread custom." *See Carney*, 534 F.3d at 1274 ("plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way" to allege an informal custom amounting to a widespread practice).[6]

### 2. Failure to Train or Discipline

As an alternative ground for municipal liability, plaintiff alleges that Denver, despite a history of excessive force by its police officers, "continues to fail to train, discipline, or even acknowledge the conduct perpetuated by [its] officers." Docket No. 4 at 25, ¶ 90. To state a *Monell* claim based on the failure to train or supervise, a plaintiff must sufficiently allege that the failure "amounts to deliberate indifference to the rights of

---

967 F.3d 1049 (10th Cir. 2020)). The Tenth Circuit, however, was reviewing the district court's denial of summary judgment on the basis of qualified immunity, not whether the plaintiff plausibly alleged sufficient facts to survive a motion to dismiss. Moreover, as the Court has mentioned, the outcome of the litigation is not relevant at this stage. *See, e.g.*, *Thomas*, 2021 WL 5810742, at *16; *Pittman*, 2020 WL 6586659, at *11.

[6] Plaintiff also mentions the January 2017 OIM report, which he claims "highlighted several noteworthy deficiencies in the Denver Police Department's draft Use of Force Policy." Docket No. 4 at 13, ¶ 85. Plaintiff, however, has not provided the draft policy itself. Moreover, plaintiff does not show how a draft policy could be a "formal regulation or policy statement" or an "informal custom amount[ing] to a widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law" or how there could be a "direct causal link" between a draft policy and the "injury alleged." *See Bryson*, 627 F.3d at 788.

persons with whom the police come into contact." *Harris*, 489 U.S. at 388. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61; *see also Okla. City v. Tuttle*, 471 U.S. 808, 822–23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*.").

Plaintiff alleges that the Department has not disciplined Officer Johnson, Officer Larson, or Sergeant O'Neill for their "failure to intervene or the use of unreasonable force," for Sergeant O'Neill finding no wrongdoing, and for Detective Botello noting that "everything in [Sergeant O'Neill's report] was accurate." Docket No. 4 at 5–6, ¶¶ 39–41. Plaintiff also alleges that Denver "continues to fail to train, discipline, or even acknowledge" officers' unconstitutional conduct. *Id.* at 25–26, ¶ 91.

These allegations lack any supporting factual allegations providing a basis for plaintiff's failure-to-train theory. Plaintiff does not set forth any facts concerning how Officer Johnson, Officer Larson, or Sergeant O'Neill were trained, who trained them, or why their training was deficient. *See, e.g.*, *Sexton*, 530 F. Supp. 3d at 1072 (finding the plaintiff's failure-to-train allegations insufficient where the plaintiff did not provide allegations about how the officers were trained an who trained them); *Erickson*, 489 F. Supp. 3d at 1208 (dismissing *Monell* claim for failure to allege specific facts regarding the officers' training, did not identify individuals that allegedly failed to adequately supervise or train, and did not contain allegations establishing a pattern of similar conduct); *Est. of Lobato by & through Montoya v. Correct Care Sols., LLC*, No. 15-cv-02718-PAB-STV, 2017 WL 1197295, at *7 (D. Colo. Mar. 31, 2017) ("Notice of particular deficiencies in a training program is the crux of a failure-to-train theory."); *Bark v.*

16

*Chacon*, No. 10-cv-01570-WYD-MJW, 2011 WL 1884691, at *3 (D. Colo. May 18, 2011) (dismissing municipal liability claim where plaintiff had "generally allege[d]" that the individual defendants were not properly trained but had not "allege[d] specific deficiencies in training and supervision, or explain[ed] how the incident described in the Amended Complaint could have been avoided with different or better training and supervision").

Plaintiff argues that, based on the similar incidents that he alleged, the 2017 OIM report, and Detective Botello's use of force conclusion, he has "connected dozens of former cases with eerily similar facts." Docket No. 4 at 11. Plaintiff is mistaken. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quotation omitted). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390–91.

Plaintiff has alleged four incidents of use of excessive force other than his own that are separated by 13 years, which is insufficient to demonstrate a policy of failure to train. Therefore, plaintiff has also not shown a pattern of similar constitutional violations by untrained officers because he has not alleged how the officers in the similar incidents were trained. While "policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability," *Connick*, 563 U.S. at 62 (internal quotation

marks and citation omitted), the complaint's allegations do not plausibly allege that Denver knew or should have known that its use of force training would result in a constitutional violation.

Plaintiff's allegations regarding a practice of not disciplining officers are also not sufficient to plausibly allege municipal liability.  The Tenth Circuit has held that "[r]arely if ever is 'the failure of a police department to discipline in a specific instance . . . an adequate basis for municipal liability under *Monell*.'"  *Schneider*, 717 F.3d at 777 (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1056 (10th Cir. 1993)).  Plaintiff alleges that the Department did not discipline Officer Johnson, Officer Larson, or Sergeant O'Neill and that that Sergeant O'Neill and Detective Botello found no issues with the officers' use of force.  *See, e.g.*, Docket No. 4 at 5–, ¶¶ 39–41.  The allegations regarding the specific officers in this case fail to plausibly demonstrate a causal link between the municipal action and the alleged deprivation of rights.  *See Brown*, 520 U.S. at 404.  Plaintiff's allegation that Denver "continues to fail to train, discipline, or even acknowledge" the allegedly unconstitutional conduct of its officers, *id.* at 25, ¶ 90, is conclusory, *see Cory*, 583 F.3d at 1244; *Moffett*, 291 F.3d at 1232, and therefore insufficient to plausibly allege municipal liability for failure to discipline.

Although plaintiff does not appear to advance a separate ratification theory of municipal liability, *see* Docket No. 19 at 4, to the extent plaintiff alleges that the Department's failure to discipline the officers involved in this case amounted to ratification of unconstitutional conduct, such a claim would also fail because a mere failure to discipline does not constitute ratification.  *See Erickson*, 489 F. Supp. 3d at 1207 (citing *Jack v. Cnty. of Stanislaus*, 2017 WL 4123930, at *7 (E.D. Cal. Sept. 15, 2017) ("Ratification is more than acquiescence, and a mere failure to discipline does not

amount to ratification."); *C.F.B. v. Hayden*, 2019 WL 1299679, at *13 (D. Kan. Mar. 21, 2019) ("While this 'ratification' theory may be evidence of the existence of an informal policy, it is not alone enough to be considered an "official policy" giving rise to *Monell* liability.")).  Nor has plaintiff identified the final policymaker who allegedly ratified the officers' conduct.  *See id.* (citing *Rehberg v. City of Pueblo*, 10-cv-00261-LTB-KLM, 2012 WL 1326575, at *7 (D. Colo. Apr. 17, 2012) (finding that plaintiff's allegations that "Pueblo" and its "supervisory officers" approved conduct at issue was insufficient for failure to allege that authorized policymaker ratified conduct); *Tivis v. City of Colo. Springs*, 19-cv-00867-KMT, 2020 WL 1166842, at *5 (D. Colo. Mar. 11, 2020) (dismissing *Monell* claim where plaintiff's complaint failed to identify a final policymaker); *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) (affirming dismissal for failure to allege conduct was approved by official policymaker)).

Because plaintiff has not plausibly alleged an official policy or a custom amounting to a widespread practice, the Court will dismiss his claim against Denver without considering the causation or state-of-mind elements of municipal liability.  *See Schneider*, 717 F.3d at 769; *see also Cook v. Whyde*, No. 20-CV-02912-PAB-STV, 2021 WL 4459051, at *16 (D. Colo. Sept. 29, 2021) (dismissing *Monell* claim without considering causation or deliberate indifference because the plaintiff failed to plausibly allege an official policy or custom); *Est. of Marciano Briones v. Adams Cnty.*, No. 18-cv-00865-PAB-MEH, 2020 WL 6343343, at *8 (D. Colo. Oct. 29, 2020) (same); *Erickson*, 489 F. Supp. 3d at 1208 (same).

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the City and County of Denver's Motion to Dismiss [Docket No.

14] is **GRANTED**.  It is further

      **ORDERED** that plaintiff's claim against the City and County of Denver is

**DISMISSED with prejudice**.


      DATED August 23, 2022.


                           BY THE COURT:


                           PHILIP A. BRIMMER
                           Chief United States District Judge