IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-01538-PAB-MEH

AARON HERNANDEZ, an individual,

     Plaintiff,

v.

OFFICER JAYME R. LARSON, in their individual capacity,
OFFICER VANCE JOHNSON, in their individual capacity, and
SERGEANT MICHAEL O'NEILL, in their individual capacity,

     Defendants.

_____

**ORDER**
_____

     This matter is before the Court on Defendants' Motion for Summary Judgment

[Docket No. 57]. Plaintiff Aaron Hernandez filed a response, Docket No. 69, and

Sergeant Michael O'Neill, Officer Jayme R. Larson, and Officer Vance Johnson

(collectively, the "defendants") replied. Docket No. 76. The Court has jurisdiction

pursuant to 28 U.S.C. § 1331.

**I.    BACKGROUND[1]**

     Defendants are Denver Police Department ("DPD") officers[2] who were present at

plaintiff's arrest. Docket No. 57 at 2, ¶ 1. On June 30, 2019, while on patrol, Sergeant

_____

[1] The following facts are undisputed unless otherwise indicated.

[2] Both parties submitted the officers' body-worn camera videos as exhibits. *See*
Docket Nos. 57-3, 57-6, 57-9, 70. While the parties dispute what is shown or not shown
on the videos, neither side challenges the authenticity of the videos. Mr. Hernandez
also cites *Scott v. Harris*, 550 U.S. 372, 378-81 (2007), a United States Supreme Court
decision governing the use of video evidence at the summary judgment stage. *See*
Docket No. 69 at 2.

O'Neill observed a man in a vehicle in a church parking lot. *Id*., ¶ 2. The church was closed and the vehicle was parked several parking spaces away from a church van with a broken window. *Id*.; Docket No. 57-3 at 0:43.[3] Sergeant O'Neill ran the vehicle's license plate number and learned the registered owner had an active felony warrant. Docket No. 57 at 2, ¶ 3.[4] As Sergeant O'Neill approached the vehicle, Mr. Hernandez exited the passenger side of the vehicle. *Id*., ¶ 4.[5] Sergeant O'Neill instructed Mr. Hernandez to return to the vehicle three times and Mr. Hernandez complied with the instruction. *Id*., ¶ 5.[6] Sergeant O'Neill then made contact with the individual in the driver's seat, later determined to be plaintiff's son, Aaron Hernandez, Jr. *Id*. at 3, ¶ 7.

---

[3] Mr. Hernandez's response to this fact states, "Plaintiff admits only that on June 30, 2019, he was sitting in the passenger seat of a parked vehicle in his church's parking lot, and that a church van had recently been vandalized." Docket No. 69 at 3, ¶ 2. Mr. Hernandez provides no explanation regarding what portions of this fact he denies and fails to cite any evidence to support a denial. *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv ("Any denial shall be accompanied by a **brief** factual explanation of the reason(s) for the denial and a **specific reference** to material in the record supporting the denial."). Accordingly, the Court deems this fact admitted.

[4] Mr. Hernandez's response to this fact states, "Plaintiff admits only that his son had a warrant out of Jefferson County, Colorado for forgery, a non-violent crime, which he learned of after the arrest." Docket No. 69 at 3, ¶ 3. Mr. Hernandez provides no evidence disputing the rest of defendants' statement and therefore the Court deems this fact admitted.

[5] The parties dispute Mr. Hernandez's behavior and statements as he got out of the vehicle. *Compare* Docket No. 57 at 2, ¶ 4 *with* Docket No. 69 at 3, ¶ 4. However, the Court finds that there is no dispute that Mr. Hernandez exited the vehicle on the passenger side as Sergeant O'Neill approached the vehicle. *See* Docket No. 57-3 at 0:47-1:07. The Court therefore deems this portion of the fact undisputed.

[6] Mr. Hernandez's response to this fact states, "Plaintiff admits that he complied with Defendant O'Neill's order to sit inside his vehicle. This interaction took approximately fifteen seconds." Docket No. 69 at 3, ¶ 5. This response does not dispute that Sergeant O'Neill instructed plaintiff to return to the vehicle three times. Accordingly, the Court deems this portion of the fact undisputed.

Plaintiff's son claimed he had permission to be at the church from his pastor and that he "hates cops."  *Id.*[7]

Officer Johnson and Officer Larson arrived after Sergeant O'Neill requested back-up.  *Id.*, ¶ 9.  Officer Larson's role as the cover officer was to cover the lead officer, ensure scene security for officer safety, and assist in watching other parties.  *Id.*, ¶ 10. Officer Larson understood that Sergeant O'Neill was with a person wanted on a warrant. *Id.*, ¶ 11.[8]  Sergeant O'Neill informed Officer Larson that Mr. Hernandez had been placing his hands under the passenger seat.  *Id.*, ¶ 12.[9]  Officer Larson positioned herself behind the middle pillar of the vehicle and watched Mr. Hernandez.  *Id.*, ¶ 13.

Sergeant O'Neill and Officer Johnson stood with plaintiff's son at the rear of the vehicle on the driver's side and placed him under arrest for the felony warrant.  *Id.*, ¶ 14.[10]  Mr. Hernandez then leaned up from his reclined chair, looked over his left

---

[7] Mr. Hernandez's response to this fact states, "Plaintiff admits that Plaintiff's son, Aaron Hernandez, Jr., had permission from his pastor, Pastor Gail Bailey, to be on the church premises."  Docket No. 69 at 4, ¶ 7.  Mr. Hernandez provides no evidence disputing the rest of defendants' statement and therefore the Court deems this fact admitted.

[8] Mr. Hernandez's response to this fact states, "Plaintiff admits that Defendant Larson's deposition testimony is summarized accurately.  However, Plaintiff denies the suggested connection between arresting a person on a warrant and an increased probability of violence occurring.  There is no evidence to validate such a claim – it is a mere feeling expressed by an officer."  Docket No. 69 at 4, ¶ 11.  Plaintiff provides no evidence to dispute that Officer Larson knew that Sergeant O'Neill was with a person wanted on a warrant.  Accordingly, the Court deems this portion of the fact undisputed.

[9] Mr. Hernandez's response to this fact disputes that Sergeant O'Neill saw plaintiff reach under the seat, *see* Docket No. 69 at 4, ¶ 12; however, the response does not dispute that Sergeant O'Neill told Officer Larson that plaintiff reached under the seat.  Therefore, the Court deems this fact undisputed.

[10] Mr. Hernandez's response to this fact states, "Plaintiff admits only that his son, Aaron Hernandez, Jr., was taken into custody."  Docket No. 69 at 4, ¶ 14.  Mr. Hernandez provides no evidence disputing the rest of defendants' statement and therefore the Court deems this fact admitted.

shoulder where his son was being arrested, and began exiting the vehicle.  *Id*., ¶ 15.[11]

Officer Larson approached Mr. Hernandez, pointed inside the vehicle, and said "eh, eh,

eh."  *Id*., ¶ 16.[12]  Mr. Hernandez moved his legs outside of the vehicle and stood up.  *Id*.

at 4, ¶ 18.[13]  As Mr. Hernandez lifted himself out of the vehicle, his right wrist rose with

his body.  *Id*., ¶ 19.[14]  Interpreting this action as aggression and concerned about

plaintiff attempting to interfere in the arrest of his son, Officer Larson stepped in front of

Mr. Hernandez to prevent him from moving forward, grabbed his wrist to control his

movement, and ordered him to stop.  *Id*., ¶ 20.[15]  Mr. Hernandez grabbed Officer

Larson's arm.  *Id*., ¶ 21.[16]  Mr. Hernandez repeatedly told Officer Larson he was

"hurting."  Docket No. 69 at 9, ¶ 8; Docket No. 76 at 4, ¶ 8.

---

[11] Mr. Hernandez's response to this fact states, "Plaintiff admits only that he got up from a reclined position and swung his legs out the passenger door area to stand up."  Docket No. 69 at 4, ¶ 15.  Plaintiff provides no evidence disputing the rest of defendants' statement and therefore the Court deems this fact admitted.

[12] The parties dispute whether Officer Larson's actions were an attempt to de-escalate the situation.  *Compare* Docket No. 57 at 3, ¶ 16 *with* Docket No. 69 at 5, ¶ 16.

[13] The parties dispute whether plaintiff advanced towards Officer Larson during this movement.  *Compare* Docket No. 57 at 4, ¶ 18 *with* Docket No. 69 at 5, ¶ 18.

[14] The Court deems this portion of the fact admitted.  The parties dispute whether plaintiff's right hand began to make a fist as he lifted himself out of the vehicle. *Compare* Docket No. 57 at 4, ¶ 19 *with* Docket No. 69 at 5-6, ¶¶ 19, 23.  Whether plaintiff's hand began to make a fist is a fact determination for the jury.  *See* Docket No. 57-6 at 0:35-0:45.  However, the Court finds that the rest of defendants' statement is admitted because plaintiff provides no evidence disputing that his right wrist rose with his body as he lifted himself out of the vehicle.

[15] Plaintiff's response to this fact states, "Plaintiff admits only that Defendant Larson aggressively contacted him based solely on his act of standing up from the seat of his car."  Docket No. 69 at 5, ¶ 20.  Plaintiff provides no evidence disputing the rest of defendants' statement and therefore the Court deems this fact admitted.

[16] The parties dispute whether plaintiff pushed Officer Larson.  *Compare* Docket No. 57 at 4, ¶ 21 *with* Docket No. 69 at 5-6, ¶ 21.  However, the Court finds that, based on Officer Larson's body camera video, it is undisputed that Mr. Hernandez grabbed Officer Larson's arm.  *See* Docket No. 57-6 at 0:40-0:47; Docket No. 77 at 1-2.

Officer Johnson proceeded around to the passenger side of the vehicle after he heard raised voices and observed Officer Larson and plaintiff struggling.  Docket No. 57 at 4, ¶ 22.  To assist Officer Larson, Officer Johnson grabbed Mr. Hernandez's arm and escorted him away from the open passenger door of the vehicle to get him away from any potential weapons.  *Id.*, ¶ 24.[17]  Officer Larson instructed Mr. Hernandez twice to put his hands behind his back.  *Id.*, ¶ 25.  Mr. Hernandez pulled his hands away from the officers.  *Id.* at 5, ¶ 26; Docket No. 69 at 6, ¶ 26.[18]  In Officer Larson's body camera video, Officer Johnson can be heard saying, "knee me in the balls, what the f*** is wrong with you?"  Docket No. 57 at 5, ¶ 28.[19]  In the body camera video, Mr. Hernandez responds, "I can't help it."  *Id.*  Officer Larson then struck Mr. Hernandez once in the side to get his hands behind his back and to effectuate an arrest.  *Id.*, ¶ 32.[20]  Officer

---

[17] Mr. Hernandez's response to this fact states, "Denied.  Defendant Johnson immediately applied excessive force, and there was no reason to believe weapons were present. . . . Defendants searched the vehicle and did not find any weapons anywhere, including under Plaintiff's seat."  Docket No. 69 at 6, ¶ 24 (citations omitted).  Plaintiff's cited evidence only states that no weapons were found in the car.  *See* Docket No. 69-5 at 22, 79:11-15.  Whether any weapons were ultimately found in the car is not material to whether Officer Johnson thought there could be weapons.  Accordingly, the Court deems this fact undisputed.

[18] The parties dispute whether Mr. Hernandez was intentionally ignoring Officer Larson's commands or whether plaintiff was responding to the pain he was experiencing.  *Compare* Docket No. 57 at 5, ¶ 26 *with* Docket No. 69 at 6, ¶ 26.  However, the Court finds that it is undisputed that plaintiff pulled his hands away from the officers.  *See* Docket No. 57-7 at 3, 78:7-12 ("Q: Were you pulling your arms away from the officers when they were trying to put your hands behind your back?  A: Yeah. I pulled my hands out because I was going to fall to the ground so I wouldn't hit my face, but that didn't hit my face.").

[19] The parties dispute whether Mr. Hernandez struck Officer Johnson in the groin with his knee and whether Mr. Hernandez kicked Officer Larson in the shin.  *Compare* Docket No. 57 at 5, ¶¶ 27, 30 *with* Docket No. 69 at 6-7, ¶¶ 27, 30.

[20] Mr. Hernandez's response to this fact states, "Plaintiff admits only that Defendant Larson struck him in the side, causing pain and injury."  Docket No. 69 at 7, ¶ 32.  Mr. Hernandez cites no evidence disputing defendants' statement and therefore the Court deems this fact admitted.

Johnson then applied an elbow strike to Mr. Hernandez's face.  *Id.*, ¶ 34.  The amount of time that elapsed from the moment Officer Larson approached Mr. Hernandez until the moment Mr. Hernandez was placed in handcuffs was 56 seconds.  *Id.* at 6, ¶ 38. The amount of time that elapsed between Mr. Hernandez's alleged assault on the officers and the officers' use of force against Mr. Hernandez was approximately ten seconds.  *Id.*, ¶ 37.[21]

Mr. Hernandez was charged with felony assault against a peace officer under Colo. Rev. Stat. § 18-3-203(1)(c) and misdemeanor assault on a first responder under Colo. Rev. Stat. § 18-3-204(1)(a).  Docket No. 57 at 6, ¶ 39; Docket No. 57-8.  There are no photographs or medical records of Officer Larson's and Officer Johnson's alleged injuries.  Docket No. 69 at 10, ¶ 18; Docket No. 76 at 5, ¶ 18.  Officer Larson's police report, which was used in Mr. Hernandez's prosecution, states that Mr. Hernandez exited the vehicle and "advanced towards me."  Docket No. 69 at 10, ¶ 20; Docket No. 76 at 5, ¶ 20.  The Denver District Attorney's Office ultimately moved to dismiss the criminal case against Mr. Hernandez.  Docket No. 69 at 10, ¶ 17.

## II.     LEGAL STANDARD

### A.  <u>Summary Judgment</u>

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

---

[21] Mr. Hernandez's response to this fact states, "Plaintiff only admits that the interaction between Plaintiff and Defendants to the point of being placed in handcuffs lasted 56 seconds."  Docket No. 69 at 8, ¶ 37.  Mr. Hernandez cites no evidence disputing defendants' statement and therefore the Court deems this fact admitted.

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

## B. **Qualified Immunity**

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

To overcome a qualified immunity defense at the summary judgment stage, a plaintiff must demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Surat v. Klamser*, 52 F.4th 1261, 1270-71 (10th Cir. 2022).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236.  A plaintiff must establish both prongs of the qualified immunity analysis to prevail; however, a defendant can prevail by demonstrating inadequacy with respect to either prong. *See Shroff v. Spellman*, 604 F.3d 1179, 1188 (10th Cir. 2010).

A constitutional right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing

violates that right." *Surat*, 52 F.4th at 1276.  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Torres v. Madrid*, 60 F.4th 596, 603 (10th Cir. 2023); *see also Irizarry v. Yehia*, 38 F.4th 1282, 1293 (10th Cir. 2022).  The relevant precedent is "considered on point if it involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue."  *Yehia*, 38 F.4th at 1294 (emphasis in original); *see also Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022).  "To be clear, we do not require plaintiffs to engage in a scavenger hunt for a prior case with identical facts.  We ask whether the existing law provides fair warning to a defendant."  *Shepherd*, 55 F.4th at 815 (citations omitted).

## III.    ANALYSIS

Mr. Hernandez asserts claims under the Fourth Amendment against Officer Larson, Officer Johnson, and Sergeant O'Neill for unlawful seizure and arrest, excessive force, and malicious prosecution.  Docket No. 4 at 7-12; *see also* Docket No. 69 at 11-24.  Defendants argue that they are entitled to qualified immunity on all claims. Docket No. 57 at 7-20.

### A.  <u>Claim One – Unlawful Seizure and Arrest</u>

The Fourth Amendment provides the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. Amend. IV.  A "seizure" of one's person occurs when a government actor terminates one's freedom of movement through intentional means. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–97 (1989); *Scott*, 550 U.S. at 381.  The

Supreme Court has identified three types of police encounters with citizens: consensual encounters, investigative detentions, and arrests. *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc). Investigative detentions and arrests are "seizures" within the meaning of the Fourth Amendment. *Id*.

"An investigative detention, also called a *Terry* stop, is an encounter in which police may 'stop and briefly detain a person for investigative purposes.'" *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). An investigative detention is justified "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Id*. at 1191-92 (quoting *Sokolow*, 490 U.S. at 7). The officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). Reasonable suspicion requires more than a "hunch," but is "considerably less than proof by a preponderance of the evidence or that required for probable cause." *United States v. Chavez*, 660 F.3d 1215, 1221 (10th Cir. 2011). Reasonable suspicion is based on the "totality of the circumstances." *Id*. at 1222.

An arrest requires probable cause to believe that the arrestee committed a crime. *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008). "In a qualified immunity context, the probable cause evaluation is a question of law appropriate for resolution by the Court." *Shimomura v. Carlson*, 17 F. Supp. 3d 1120, 1132 (D. Colo. 2014) (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). In determining whether an officer has probable cause for an arrest, the court must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an

objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal quotations marks and citation omitted). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)). Probable cause is not a high bar. *Wesby*, 138 S. Ct. at 586. "Because probable cause is measured by an objective standard, 'an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking.'" *Mglej v. Gardner*, 974 F.3d 1151, 1161 (10th Cir. 2020) (quoting *Wesby*, 138 S. Ct. at 584 n.2).

Mr. Hernandez argues that defendants violated his Fourth Amendment rights by detaining him without reasonable suspicion and arresting him without probable cause. Docket No. 69 at 11. Specifically, Mr. Hernandez argues that (1) Sergeant O'Neill did not have reasonable suspicion to order him to remain in the vehicle; (2) Officer Larson did not have probable cause to arrest him when she grabbed his wrist; and (3) Officer Larson and Officer Johnson did not have probable cause to arrest him for assault or obstruction. *Id*. at 11-15. Furthermore, Mr. Hernandez argues that Sergeant O'Neill failed to intervene to prevent his unlawful arrest. *Id*. at 20-21.

### 1.  Sergeant O'Neill Ordering Plaintiff to Remain in the Vehicle

Mr. Hernandez argues that Sergeant O'Neill unlawfully detained him when Sergeant O'Neill ordered Mr. Hernandez to sit in the vehicle. *Id*. at 12. Mr. Hernandez argues that Sergeant O'Neill had no reasonable suspicion to detain him because

11

"simply being in a high crime area, without more, such as fleeing when seeing police, does not give an officer reasonable suspicion to temporarily detain a person for further investigation." *Id*. (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)).  Plaintiff argues that he did not do anything that would give Sergeant O'Neill reasonable suspicion to detain him.  *Id*.  Defendants argue that Sergeant O'Neill had reasonable suspicion to approach the vehicle because the registered owner had an active felony warrant.  Docket No. 57 at 8.

The Court finds that Mr. Hernandez was not unlawfully seized when Sergeant O'Neill instructed him to return to the vehicle.  Under the Fourth Amendment, an officer may order a passenger, who is not suspected of criminal activity, to return to the vehicle for purposes of ensuring officer safety during a lawful traffic stop.  *See, e.g.*, *United States v. Williams*, 419 F.3d 1029, 1034 (9th Cir. 2005) (holding that "under the Fourth Amendment it is reasonable for an officer to order a passenger back into an automobile that he voluntarily exited because [of] concerns for officer safety"); *United States v. Holt*, 264 F.3d 1215, 1223 (10th Cir. 2001) (en banc) (discussing how "considerations of officer safety" allow an officer to "order the passengers to remain in the vehicle" during a traffic stop), *overruled on other grounds recognized in United States v. Stewart*, 473 F.3d 1265 (10th Cir. 2007); *Rogala v. District of Columbia*, 161 F.3d 44, 53 (D.C. Cir. 1998) (holding that "a police officer has the power to reasonably control the situation by requiring a passenger to remain *in* a vehicle during a traffic stop"); *United States v. Moorefield*, 111 F.3d 10, 11 (3d Cir. 1997) (holding that officers may constitutionally order passengers not suspected of criminal activity to remain in the vehicle); *United States v. Walker*, 575 F. App'x 146, 148 (4th Cir. 2014) (unpublished) (holding that,

during a lawful traffic stop for an expired registration, the officer "possessed the authority to order [the passenger] to remain inside the vehicle" without any reasonable suspicion that the passenger was engaged in criminal activity); *United States v. Prigmore*, 15 F.4th 768, 778 (6th Cir. 2021) (holding that concerns for officer safety allow officers to order passengers to remain in the vehicle); *United States v. Sanders*, 510 F.3d 788, 789-90 (8th Cir. 2007) (holding that officer did not violate the Fourth Amendment by ordering the passenger three times to return to the vehicle during a traffic stop after the passenger exited the vehicle); *United States v. Clark*, 337 F.3d 1282, 1282-83, 1288 (11th Cir. 2003) (holding that it was reasonable for an officer to order a passenger to re-enter the vehicle to protect the officer's safety after the officer observed two of the vehicle's occupants fighting*); United States v. Vann*, 2008 WL 3836460, at *2 (W.D. Okla. Aug. 13, 2008) ("Every circuit to address the issue of whether it is appropriate for an officer to order a passenger back into a vehicle during a routine traffic stop have found that it is.").  The Ninth Circuit explains that "[g]iving officers the authority to control all movement in a traffic encounter is sensibly consistent with the public interest in protecting their safety. . . [a]llowing a passenger, or passengers, to wander freely about while a lone officer conducts a traffic stop presents a dangerous situation by splitting the officer's attention between two or more individuals, and enabling the driver and/or the passenger(s) to take advantage of a distracted officer."  *Williams*, 419 F.3d at 1034 (citation omitted).  The "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car."  *Maryland v. Wilson*, 519 U.S. 408, 414 (1997).

It is undisputed that Sergeant O'Neill observed a vehicle parked near a church van with a broken window.  Docket No. 57 at 2, ¶ 2.  Sergeant O'Neill ran the vehicle's license plate number and learned the registered owner had an active felony warrant. *Id*., ¶ 3.  As Sergeant O'Neill approached the vehicle, Mr. Hernandez exited the passenger side of the vehicle.  *Id*., ¶ 4.  Sergeant O'Neill instructed Mr. Hernandez to return to the vehicle three times and Mr. Hernandez complied with the instruction.  *Id*., ¶ 5.  The Court finds that any reasonable officer in Sergeant O'Neill's position would have concerns for officer safety when approaching a vehicle where the registered owner had an active felony warrant.  *See Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977) (recognizing "the inordinate risk confronting an officer as he approaches a person seated in an automobile").  The Court therefore finds that Mr. Hernandez's "compliance with [Sergeant O'Neill's] command to get back into the car in which [Mr. Hernandez] had just exited is not an unreasonable seizure under the Fourth Amendment" because Sergeant O'Neill had the authority to order Mr. Hernandez to return to the vehicle to ensure officer safety.  *See Williams*, 419 F.3d at 1031.  Accordingly, the Court grants summary judgment in favor of defendants on this portion of the Fourth Amendment claim for unlawful detention.[22]

### 2.  Officer Larson Grabbing Plaintiff's Wrist

The parties dispute whether Mr. Hernandez was under arrest or merely detained when Officer Larson grabbed Mr. Hernandez's wrist after he got out of the vehicle. Defendants argue that Mr. Hernandez was "detained" when Officer Larson grabbed his

---

[22] The Court will not address the second prong of the qualified immunity analysis, whether the law was clearly established, because plaintiff has failed to show a constitutional violation.  *See Pearson*, 555 U.S. at 236; *Shroff*, 604 F.3d at 1188.

wrist.  Docket No. 57 at 8-9.  Mr. Hernandez asserts that he was under arrest the moment Officer Larson grabbed his wrist.  Docket No. 69 at 12-14.

The Tenth Circuit has recognized that officers are allowed, in the course of effectuating an arrest warrant, to conduct a "protective detention" of other individuals present at the scene of the arrest for purposes of ensuring officer safety.  *United States v. Maddox*, 388 F.3d 1356, 1362-67 (10th Cir. 2004); *see also Crall v. Wilson*, 769 F. App'x 573, 577 (10th Cir. 2019) (unpublished) ("Law enforcement may temporarily detain individuals, including third parties, in the course of executing a valid arrest warrant in certain circumstances.").  "The required level of suspicion required to effect a protective detention varies, however, depending upon the area in which the detention occurs."  *United States v. Kinzalow*, 236 F. App'x 414, 418 (10th Cir. 2007) (unpublished).  "Where an individual is in an area immediately adjoining the arrestee, the individual may be placed in temporary protective detention even in the absence of probable cause or a reasonable suspicion that the individual poses a threat to officer safety."  *Id*. (citing *Maddox*, 388 F.3d at 1362-63; *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995)).  However, where an individual is not within the area "immediately adjoining" the arrestee, an officer may place the individual in a protective detention only if the officer has "reasonable, articulable suspicion that [the] person poses a danger to those on the arrest scene."  *Maddox*, 388 F.3d at 1363-65 (internal alterations and citation omitted); *see also Kinzalow*, 236 F. App'x at 418.  Furthermore, "the protective detention must be no more than necessary to protect the officers from harm, taking only reasonable steps to ensure their safety after, and while making, the arrest."  *Maddox*, 288 F.3d at 1367 (internal alterations, quotations, and citation

omitted); *see also Holmstrom v. Bd. of Cnty. Comm'rs for Cnty. of Chaves*, 181 F. Supp. 3d 862, 869 (D.N.M. 2016); *Manriquez v. Ames*, 2022 WL 741888, at *7-8 (D.N.M. Mar. 11, 2022) (holding that the seizure of a passenger was a "lawful protective detention" and that the officer's actions of handcuffing the passenger at gunpoint and detaining the passenger in a police car for twelve minutes were reasonable measures for officer safety because the driver was suspected of committing an armed robbery).

The Court finds that Officer Larson's action of grabbing Mr. Hernandez's wrist did not constitute an arrest, but rather was a protective detention taken for the purpose of ensuring officer safety during the arrest of plaintiff's son.  It is undisputed that Officer Larson's role as the cover officer was to ensure scene security for officer safety.  Docket No. 57 at 3, ¶ 10.  Officer Larson understood that Sergeant O'Neill was with a person wanted on a warrant.  *Id.*, ¶ 11.  Sergeant O'Neill informed Officer Larson that Mr. Hernandez had been placing his hands under the passenger seat.  *Id.*, ¶ 12.  Officer Larson positioned herself behind the middle pillar of the vehicle and watched Mr. Hernandez.  *Id.*, ¶ 13.  As Sergeant O'Neill and Officer Johnson placed plaintiff's son under arrest at the rear of the vehicle on the driver's side, Mr. Hernandez began exiting the vehicle.  *Id.*, ¶¶ 14-15.  As Mr. Hernandez lifted himself out of the vehicle, his right wrist rose with his body.  *Id.* at 4, ¶ 19.  Interpreting this action as aggression and concerned about Mr. Hernandez attempting to interfere in the arrest of his son, Officer Larson stepped in front of Mr. Hernandez to prevent him from moving forward, grabbed his wrist to control his movement, and ordered him to stop.  *Id.*, ¶ 20.

The Court finds that Officer Larson could properly place Mr. Hernandez in a protective detention, regardless of whether she harbored reasonable suspicion that Mr.

Hernandez posed a threat to officer safety, given the close proximity between Mr. Hernandez and the location of the son's arrest and given that Mr. Hernandez exited the passenger front door of the vehicle while his son was being arrested at the rear of the vehicle.  *See id*. at 3, ¶¶ 14-15; *see also Kinzalow*, 236 F. App'x at 418 (holding that "Mr. Kinzalow could be detained for officer safety purposes regardless of whether the officers possessed a reasonable suspicion that he posed a danger" given "the close proximity of the living room where Mr. Kinzalow was seated to the bedroom where [the arrestee] was arrested"); *Thompson*, 58 F.3d at 1517 (upholding protective detention of an individual, without the presence of reasonable suspicion, based on the individual's presence in the same business establishment as the arrestee).  In addition, the Court finds that Officer Larson possessed reasonable suspicion that Mr. Hernandez posed a potential danger to the arresting officers because Sergeant O'Neill informed Officer Larson that Mr. Hernandez had been placing his hands under the passenger seat.  *See* Docket No. 57 at 3, ¶ 12.  Accordingly, Officer Larson had the authority to place Mr. Hernandez in a protective detention for purposes of ensuring officer safety during the arrest of plaintiff's son.  Furthermore, the Court finds that the scope of the protective detention was reasonable.  As Mr. Hernandez got out of the vehicle, Officer Larson stepped in front of Mr. Hernandez, grabbed his wrist to control his movement, and ordered him to stop.  *Id*. at 4, ¶ 20.  Officer Larson did not initially handcuff Mr. Hernandez or draw her weapon.  *See Maddox*, 388 F.3d at 1367.  Officer Larson "employed no more force than was necessary for officer protection in temporarily detaining" Mr. Hernandez, and therefore the protective detention was reasonable under the Fourth Amendment.  *See id*.

Alternatively, the Court finds that Officer Larson had reasonable suspicion to detain Mr. Hernandez for investigative purposes.  Defendants argue that Officer Larson had probable cause to detain Mr. Hernandez because he had disobeyed multiple orders to remain in the vehicle, he may have had access to a weapon, he advanced towards Officer Larson, and Officer Larson was concerned that Mr. Hernandez might interfere in the arrest.  Docket No. 57 at 9.  The Court finds that the undisputed facts show that Officer Larson had reasonable suspicion that criminal activity "may be afoot."  *See Morris,* 672 F.3d at 1191-92.  Officer Larson had reasonable suspicion that Mr. Hernandez might interfere with the arrest of his son based on the totality of the circumstances because (1) Sergeant O'Neill informed Officer Larson that Mr. Hernandez had been reaching under the seat, Docket No. 57 at 3, ¶ 12; (2) Mr. Hernandez then exited the vehicle while his son was being arrested, *id*. at 4, ¶¶ 14-15; and (3) Mr. Hernandez's right wrist rose with his body as he exited the vehicle.  *Id*., ¶ 19.  Based on these undisputed facts, the Court finds that Officer Larson had reasonable suspicion to detain Mr. Hernandez for investigative purposes.

Accordingly, the Court grants summary judgment to defendants on this portion of the Fourth Amendment unlawful detention claim.[23]

### 3. Officer Larson and Officer Johnson Arresting Plaintiff for Assault or Obstruction

Mr. Hernandez argues that the officers did not have probable cause to arrest him for assault under Colo. Rev. Stat. § 18-3-203(1)(c) or for obstructing a peace officer

---

[23] The Court will not address the second prong of the qualified immunity analysis, whether the law was clearly established, because plaintiff has failed to show a constitutional violation.  *See Pearson*, 555 U.S. at 236; *Shroff*, 604 F.3d at 1188.

under Colo. Rev. Stat. § 18-8-104.  Docket No. 69 at 12-15.  Defendants argue that Officer Larson and Officer Johnson had probable cause to arrest plaintiff because he assaulted two police officers and "disobeyed numerous orders."  Docket No. 57 at 10.

### a)  Probable Cause for Assault under Colo. Rev. Stat. § 18-3-203(1)(c)

The Court will first evaluate whether the officers had probable cause to arrest Mr. Hernandez for assault under Colo. Rev. Stat. § 18-3-203(1)(c).  Under Colorado law, a person commits the crime of assault in the second degree if, "[w]ith intent to prevent one whom he or she knows, or should know, to be a peace officer. . . from performing a lawful duty, he or she intentionally causes bodily injury to any person."  Colo. Rev. Stat. § 18-3-203(1)(c).

Defendants argue that it is undisputed that Mr. Hernandez struck Officer Johnson in the groin with his knee and kicked Officer Larson in the shin.  Docket No. 57 at 10. Defendants cite the following evidence in support of this assertion: the deposition testimony of Officer Larson, the deposition testimony of Officer Johnson, Officer Larson's statement after the incident, and the body camera videos of the officers.  *See id*. at 5, ¶¶ 27-30.  Officer Johnson testified that Mr. Hernandez "turned his body towards me and lifted one of his knees.  I couldn't see which one at the time, but [he] turned his body towards me and lifted one of his knees into my groin and struck me very hard, caused a lot of pain."  Docket No. 57-5 at 2, 30:17-21.  Officer Larson's statement asserts that Mr. Hernandez "swung his right leg back to gain momentum and intentionally struck Officer Johnson in the groin with his knee.  In the process of doing so, he kicked me in my left shin causing me pain."  Docket No. 57-10 at 1.

Mr. Hernandez disputes that he kicked either officer.  Docket No. 69 at 14.  Mr. Hernandez cites the following evidence in support of this assertion: his deposition testimony, Sergeant O'Neill's deposition testimony, Officer Johnson's deposition testimony, and the body camera videos.  *Id*. at 6-7, ¶¶ 27-30.  In response to a question at his deposition regarding whether he kicked either officer, Mr. Hernandez testified, "No."  Docket No. 69-4 at 21, 80:12-14.  Sergeant O'Neill testified that he did not observe the alleged assaults on the officers.  Docket No. 69-1 at 24, 89:6-8.  Officer Johnson agreed at his deposition that the body camera video depicts him smiling and not visibly in pain. [24]  Docket No. 69-6 at 20, 72:4-22 ("Q: That's you laughing, isn't it? A: I see myself smiling. . . Q: You don't appear to have - - to be showing any outwards signs that you're in pain in that video, do you?  A: It wouldn't appear so in the video, but I assure you I was in pain.").  Mr. Hernandez notes that there is no objective evidence that the officers were kicked by plaintiff, such as cuts, bruises, photos of injuries, medical records, or clear video evidence.  Docket No. 69 at 10, ¶ 18.  Mr. Hernandez asserts that Sergeant O'Neill's body camera video "shows an instant where Plaintiff's leg is raised off the ground, but it is not clear where Defendant Johnson is located or if the leg is ever thrust in any direction."  *Id*., ¶ 19 (citing Docket No. 69-13).  Defendants reply that the Court should not accept plaintiff's version of events because it is clearly contradicted by the body camera video.  Docket No. 76 at 9.

---

[24] It is unclear whether the parties submitted this body camera footage as an exhibit to the Court.  The parties do not state at what point in time the video depicts Officer Johnson smiling and not visibly in pain.  However, Officer Johnson's deposition testimony appears to indicate that this portion of the video takes place "shortly after" Mr. Hernandez and plaintiff's son were placed into custody.  *See* Docket No. 69-6 at 20, 71:16-72:9.

The Court finds that there is a genuine dispute of material fact as to whether Mr. Hernandez kneed Officer Johnson in the groin or kicked Officer Larson in the shin.  It is undisputed that, in Officer Larson's body camera video, Officer Johnson can be heard saying, "knee me in the balls, what the f*** is wrong with you?"  Docket No. 57 at 5, ¶ 28.  Mr. Hernandez responds, "I can't help it."  *Id.*  However, viewing the evidence in the light most favorable to plaintiff, a reasonable jury could find that Mr. Hernandez did not kick either officer.  A court should only disregard a party's version of events if it is "blatantly contradicted" by video evidence.  *Scott*, 550 U.S. at 380-81; *see also Emmett v. Armstrong*, 973 F.3d 1127, 1131 (10th Cir. 2020).  Sergeant O'Neill's, Officer Larson's, and Officer Johnson's body camera videos do not clearly depict Mr. Hernandez kneeing Officer Johnson in the groin or kicking Officer Larson in the shin. *See* Docket No. 57-3 at 5:30-5:47 (Sergeant O'Neill's body camera video); Docket No. 57-6 at 1:10-1:20 (Officer Larson's body camera video); Docket No. 57-9 at 1:00-1:10 (Officer Johnson's body camera video).  Sergeant O'Neill's body camera video depicts a moment where Mr. Hernandez's right leg is raised off the ground, but it does not clearly show plaintiff kicking Officer Johnson in the groin.  *See* Docket No. 57-3 at 5:30-5:47; *see also* Docket No. 69-13 (screenshot of Sergeant O'Neill's body camera video at 5:41).  Furthermore, it is undisputed that there are no photographs or medical records of the alleged injuries of the officers.  Docket No. 69 at 10, ¶ 18; Docket No. 76 at 5, ¶ 18. A reasonable jury could believe plaintiff's version of events based on Mr. Hernandez's testimony, the lack of any medical records depicting the officers' injuries, and the fact that Sergeant O'Neill did not witness any assault.  A reasonable jury could credit Mr. Hernandez's testimony over the testimony of Officer Johnson or Officer Larson.

As a result, because a reasonable jury could find that Mr. Hernandez did not kick either officer, the jury could conclude that the officers lacked probable cause to arrest Mr. Hernandez for assault under Colo. Rev. Stat. § 18-3-203(1)(c).  *See Vazquez v. Andersen*, No. 18-cv-02645-STV, 2019 WL 2602523, at *9 (D. Colo. June 25, 2019) (holding that a reasonable jury could conclude that the officer lacked probable cause to arrest plaintiff for assault under Colorado law because plaintiff raised a genuine dispute of material fact regarding whether he struck the officer in the face).  Therefore, at this stage, there is a genuine dispute of material fact regarding whether the officers had probable cause to arrest Mr. Hernandez for assault under Colo. Rev. Stat. § 18-3-203(1)(c).

### b)  Probable Cause for Obstructing a Peace Officer under Colo. Rev. Stat. § 18-8-104(1)(a)

The Court next evaluates whether the officers had probable cause to arrest Mr. Hernandez for obstructing a peace officer under Colo. Rev. Stat. § 18-8-104(1)(a). Colorado law provides that "[a] person commits obstructing a peace officer. . . when, by using or threatening to use violence, force, physical interference, or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority."  Colo. Rev. Stat. § 18-8-104(1)(a).

The Court finds that the undisputed facts show that Officer Larson and Officer Johnson had probable cause to arrest Mr. Hernandez for obstructing a peace officer under Colo. Rev. Stat. § 18-8-104(1)(a).  It is undisputed that Mr. Hernandez exited the vehicle while his son was being arrested, despite Sergeant O'Neill's previous orders to stay in the vehicle.  Docket No. 57 at 2-4, ¶¶ 5, 14-16, 18.  As Mr. Hernandez exited the

vehicle, his right wrist rose with his body and Officer Larson interpreted this as an act of aggression.  *Id.* at 4, ¶¶ 19-20.  Officer Larson ordered Mr. Hernandez to stop and grabbed his wrist to control his movement.  *Id.*, ¶ 20.  Mr. Hernandez then grabbed Officer Larson's arm.  *Id.*, ¶ 21.  Officer Larson instructed Mr. Hernandez twice to put his hands behind his back.  *Id.*, ¶ 25.  However, Mr. Hernandez pulled his hands away from the officers.  *Id.* at 5, ¶ 26; Docket No. 69 at 6, ¶ 26.  Based on the plain language of the statute, the officers could have reasonably believed that Mr. Hernandez's failure to obey commands and his act of grabbing Officer Larson obstructed, impaired, or hindered the arrest of plaintiff's son.

In *Lord v. Hall*, 520 F. App'x 687, 692 (10th Cir. 2013) (unpublished), the Tenth Circuit found that an officer had probable cause to arrest a suspect under Colo. Rev. Stat. § 18-8-104(1)(a) in a similar factual situation.  In *Lord*, the suspect exited his truck during a traffic stop, the officer ordered him to stop and not move, the suspect attempted to re-enter his truck, the officer grabbed the suspect's arms, and the suspect broke the officer's grip and "began to raise his hand."  *Id.* at 690.  The Tenth Circuit held that the officer had probable cause to arrest the suspect under Colo. Rev. Stat. § 18-8-104(1)(a) for obstructing a peace officer because he "was uncooperative," "refused to stay put," "tried to re-enter his truck," and "resisted [the officer's] attempts to control him."  *Id.* at 692.  Similarly, here, Mr. Hernandez disobeyed several orders and resisted the officers' attempts to control him by grabbing Officer Larson and pulling his hands away from the officers.  Accordingly, the Court finds that Officer Larson and Officer Johnson had probable cause to arrest Mr. Hernandez under Colo. Rev. Stat. § 18-8-104(1)(a).  *See Holdridge v. Blank,* 255 F. Supp. 3d 1088, 1096 (D. Colo. 2017) (holding

that officer had probable cause to arrest plaintiff under Colo. Rev. Stat. § 18-8-104(1)(a) when plaintiff walked towards the officer in "an agitated manner, refused to comply with the officer's orders to stop, continued walking towards [the officer] until he was mere feet away, and then taunted the officer"); *see also Mglej*, 974 F.3d at 1161 ("an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking").

Even if the officers lacked probable cause to arrest Mr. Hernandez under Colo. Rev. Stat. § 18-8-104(1)(a), the Court finds that the officers are entitled to qualified immunity because they did not violate clearly established law.  "[W]hen a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff."  *Cortez*, 478 F.3d at 1120.  Thus, in the Tenth Circuit, "[a]s a practical matter, in the context of a qualified immunity defense on an unlawful arrest claim, [courts] ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct."  *Corona v. Aguilar*, 959 F.3d 1278, 1285 (10th Cir. 2020) (internal quotation marks, citation, and alterations omitted).  "Arguable probable cause" is another way of saying that the officers' conclusions about whether probable cause existed rested on a reasonable but mistaken belief.  *Cortez*, 478 F.3d at 1120-21; *see also Jordan v. Jenkins*, 73 F.4th 1162, 1170 (10th Cir. 2023).  The Court finds that Officer Larson and Officer Johnson had "arguable probable cause" to arrest Mr. Hernandez under Colo. Rev. Stat. § 18-8-104(1)(a) because, even if the officers' probable cause conclusion rested on a mistaken belief, that belief was reasonable.  Had Mr. Hernandez grabbed Officer Larson because

he was "simply trying to back up and put his hands in the air," *see* Docket No. 69 at 5, ¶ 21, and pulled his hands away from the officers because "he was afraid of falling to the ground and hitting his head," *see id*. at 6, ¶ 26, it was a reasonable mistake for the officers to believe that Mr. Hernandez's physical contacts were intentional acts to interfere with the arrest of his son.  Mr. Hernandez has identified no clearly established law from the Tenth Circuit or Supreme Court demonstrating that defendants lacked arguable probable cause to arrest him pursuant to Colo. Rev. Stat. § 18-8-104(1)(a) based on these facts.

As a result, the Court finds that Officer Larson and Officer Johnson are entitled to qualified immunity on the unlawful arrest claim.

### *4. Failure to Intervene*

Mr. Hernandez argues that Sergeant O'Neill failed to intervene in plaintiff's unlawful arrest and Sergeant O'Neill directed plaintiff's unlawful arrest.  *Id*. at 20-22. Defendants argue that Sergeant O'Neill is entitled to qualified immunity on this claim because there was no underlying constitutional violation.  Docket No. 57 at 14. Because the Court found that Officer Larson and Officer Johnson had probable cause to arrest Mr. Hernandez under Colo. Rev. Stat. § 18-8-104(1)(a), there is no underlying constitutional violation.  *See Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (noting that a failure to intervene claim requires an underlying constitutional violation).  As a result, the Court grants summary judgment to Sergeant O'Neill on this claim.

### B.  <u>Second Claim - Excessive Force</u>

Mr. Hernandez's claim for excessive force alleges that Officer Larson used excessive force by striking plaintiff in the side, Officer Johnson used excessive force by

striking plaintiff in the face, and Sergeant O'Neill directed the use of excessive force and failed to intervene.  Docket No. 69 at 16-22.

### 1.  Constitutional Violation

To establish a claim of excessive force under the Fourth Amendment, a "plaintiff must show both that a seizure occurred and that the seizure was unreasonable." *Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994) (quotation omitted).  The relevant inquiry is whether the force used by the officers was "reasonable under the facts and circumstances presented." *See Fogarty*, 523 F.3d at 1159 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  When examining a claim of excessive force, a "court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1287-88 (10th Cir. 2008) (quoting *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005)).  In evaluating the reasonableness of the force used during a seizure, courts consider a series of factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Defendants argue that the *Graham* factors support the amount of force used by Officer Larson and Officer Johnson.  Docket No. 57 at 12.  Defendants assert that Mr. Hernandez assaulted both officers and refused to put his hands behind his back, which justified the use of force to obtain plaintiff's compliance and effectuate an arrest.  *Id*.  Mr. Hernandez claims that the use of force was excessive.  Docket No. 69 at 16.  Mr.

Hernandez argues that the first factor weighs in his favor because it is disputed whether an assault occurred and obstruction under Colo. Rev. Stat. § 18-8-104(1)(a) is a misdemeanor.  *Id*. at 16-17.   Mr. Hernandez argues that he did not pose an immediate threat to officer safety or resist arrest because he made no hostile motions, he did not push Officer Larson, and he was in extreme pain from his recent surgery.  *Id*. at 17.

The Court finds that the first *Graham* factor, the severity of the crime at issue, weighs against the use of significant force.  As discussed previously, it is disputed whether Mr. Hernandez assaulted either officer.  On summary judgment, therefore, the Court may not conclude that the crime at issue was assault under Colo. Rev. Stat. § 18-3-203(1)(c).  The Court, however, found that the officers had probable cause to arrest Mr. Hernandez for obstruction under Colo. Rev. Stat. § 18-8-104.  "[A] minor offense supports only the use of minimal force."  *Jordan*, 73 F.4th at 1172 (quoting *Wilkins v. City of Tulsa*, 33 F.4th 1265, 1273 (10th Cir. 2022)).  Obstruction of a peace officer under Colo. Rev. Stat. § 18-8-104 is a Class 2 misdemeanor and is a "relatively minor offense," which weighs against the use of significant force.  *Rodriguez v. Lolotai*, No. 20-cv-02541-PAB-STV, 2022 WL 911132, at *9 (D. Colo. Mar. 28, 2022) (citing *Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016)); *see also Jordan*, 73 F.4th at 1172 (concluding that Colo. Rev. Stat. § 18-8-104 is a minor misdemeanor, which weighs against the use "anything more than minimal force").  Accordingly, the first factor weighs in favor of Mr. Hernandez.

Construing the facts in the light most favorable to plaintiff, the second *Graham* factor also weighs against the use of significant force.  A reasonable jury could conclude that Mr. Hernandez did not pose an immediate threat to the safety of the officers

because, under Mr. Hernandez's version of events, he never advanced towards Officer Larson; did not push Officer Larson, but rather raised his hands in the air; and did not make his hands into "fists," like he was going to throw a punch.  *See* Docket No. 69 at 5-6, 9, ¶¶ 18, 21, 23, 9.  Mr. Hernandez also repeatedly told Officer Larson he was "hurting."  *See id*. at 9, ¶ 8; Docket No. 76 at 4, ¶ 8; Docket No. 57-6 at 0:40-1:15.  The Tenth Circuit has held that a suspect with a knife did not pose an immediate threat to the officers because the suspect "neither made threats nor advanced at anyone."  *See Jordan*, 73 F.4th at 1173 (citing *Walker v. City of Orem*, 451 F.3d 1139, 1160 (10th Cir. 2006)).  Here, there is no evidence that Mr. Hernandez had a weapon and a reasonable jury could conclude that he never advanced towards the officers.  The second factor therefore weighs against the use of force.

Construing the facts in the light most favorable to plaintiff, the third *Graham* factor also weighs against the use of force because a reasonable jury could conclude that Mr. Hernandez was not actively resisting arrest or attempting to evade arrest by flight. Although Mr. Hernadez did not comply with Officer Larson's orders to put his hands behind his back, Mr. Hernandez testified that he pulled his hands back because he was afraid of falling to the ground and hitting his head.  Docket No. 69 at 6, ¶ 26 (citing Docket No. 69-4 at 21, 78:7-12).  A reasonably jury could believe that Mr. Hernandez could not put his hands behind his back due to his recent surgery, *see* Docket No. 69-4 at 21, 77:18-78:6, and therefore Mr. Hernandez was not resisting arrest.  In *Jordan*, where the plaintiff was also arrested under Colo. Rev. Stat. § 18-8-104, the Tenth Circuit found that the third *Graham* factor weighed against the use of significant force because plaintiff's version of events suggested that (1) plaintiff did not hear the officer's

command to put his hands behind his back and (2) plaintiff did not push his arm against the officers to resist arrest, but rather "used his right arm to prevent his face from hitting the ground." *See Jordan*, 73 F.4th at 1173. Accordingly, similar to the Tenth Circuit in *Jordan*, the Court finds that the third factor here weighs against the use of force.

It is undisputed that Officer Larson struck Mr. Hernandez once in the side and Officer Johnson applied an elbow strike to Mr. Hernandez's face. Docket No. 57 at 5, ¶¶ 32, 34. Mr. Hernandez cites evidence suggesting that Officer Johnson's elbow strike caused a "shattered orbital bone to Plaintiff's right eye." Docket No. 69 at 9, ¶ 10 (citing Docket No 69-7 (Mr. Hernandez's medical records) and Docket No. 69-8 (photograph of Mr. Hernandez's injuries)). The Court finds that all the *Graham* factors favor Mr. Hernandez and that he has established a constitutional violation of excessive force under the Fourth Amendment, thereby satisfying the first prong of the qualified immunity analysis. *See Jordan*, 73 F.4th at 1173-74.

### 2. Clearly Established Law

The Court next addresses whether the law was clearly established as of June 30, 2019. Defendants argue that it is not clearly established that an officer cannot use force against an individual who kicked and kneed two officers during the court of his arrest. Docket No. 57 at 13. Plaintiff first argues that *Graham* clearly establishes that the defendants' use of force was unconstitutional. Docket No. 69 at 19. However, the Supreme Court has held that *Graham*, by itself, does not create clearly established law for excessive force outside "an obvious case." *White v. Pauly*, 580 U.S. 73, 80 (2017) (citation omitted). The Court finds that this is not an obvious case where *Graham* creates the clearly established law. Plaintiff next argues that *Dixon v. Richer*, 922 F.2d

1456, 1463 (10th Cir. 1991), clearly establishes that the use of "punches and elbows against a non-threatening suspect are a violation of law."  Docket No. 69 at 19. Defendants cursorily reply that *Dixon* is not similar to this case, but provide no further explanation as to why *Dixon* cannot provide clearly established law.  *See* Docket No. 76 at 9.

In *Dixon*, police officers had reasonable suspicion to conduct an investigative stop of the plaintiff, despite the fact that plaintiff was not suspected of committing a crime.  *Dixon*, 922 F.2d at 1462.  The plaintiff submitted to being frisked by putting his hands against the side of his van, the police officer then kicked plaintiff in the instep during the frisk, and plaintiff turned around and said, "[i]s that f____ing necessary?"  *Id*. at 1458.  Several minutes later, the officers frisked the plaintiff again against the van. *Id*.  The officers kicked the plaintiff again, hit him in the stomach with a metal flashlight, and then began to choke and beat him.  *Id*.  The Tenth Circuit held that it was not reasonable for the officers to kick plaintiff, hit him in the stomach with a flashlight, or choke and beat him when "he had already been frisked, had his hands up against the van with his back to the officers, and was not making any aggressive moves or threats." *Id*. at 1463.

The Court finds that, based on *Dixon,* any reasonable officer should have understood that striking Mr. Hernandez on his side and applying an elbow strike to his face was an excessive use of force in violation of the Fourth Amendment when Mr. Hernandez was being arrested next to a vehicle for a minor crime and was not making any aggressive moves or resisting arrest.  *See id*. at 1463; *see also Perea*, 817 F.3d at 1204 (discussing how it is "clearly established law in the Tenth Circuit that the use of

disproportionate force to arrest an individual who is not suspected of committing a serious crime and who poses no threat to others constitutes excessive force"); *McCoy v. Meyers*, 887 F.3d 1034, 1052 (10th Cir. 2018) (noting that *Dixon* and several other Tenth Circuit cases "clearly establish that the Fourth Amendment prohibits the use of force without legitimate justification, as when a subject poses no threat or has been subdued").  Accordingly, and not taking into account the officers' claim that Mr. Hernandez assaulted them first given that it is disputed, Officer Larson and Officer Johnson are not entitled to qualified immunity on the excessive force claim.  The Court therefore denies this portion of the defendants' motion.

### *3. Failure to Intervene and Integral Participant Doctrine*

Mr. Hernandez argues that Sergeant O'Neill is liable for excessive force under either a theory of failure to intervene or under the "integral participant" doctrine.  Docket No. 69 at 20-23.  Defendants argue that Sergeant O'Neill is entitled to qualified immunity on both theories of liability.  Docket No. 57 at 13-16; Docket No. 76 at 7-8.

To establish a constitutional violation based on the use of excessive force under a "failure to intervene" theory, a plaintiff must show: "(i) the defendant officer was present at the scene; (ii) the defendant officer witnessed another officer applying force; (iii) the application of force was such that any reasonable officer would recognize that the force being used was excessive under the circumstances; and (iv) the defendant officer had a reasonable opportunity to intercede to prevent the further application of excessive force, but failed to do so."  *Erickson v. City of Lakewood, Colorado*, 489 F. Supp. 3d 1192, 1200 (D. Colo. 2020) (citations omitted).

Mr. Hernandez argues that Sergeant O'Neill was present at the scene, watched the assault take place while he was only a few steps away, and did not intervene. Docket No. 69 at 21. Defendants argue that there was no underlying constitutional violation; Sergeant O'Neill did not witness any use of excessive force; and even if Sergeant O'Neill witnessed any excessive force, he did not have a realistic opportunity to intervene because the use of force lasted only ten seconds and his attention was fully occupied by the arrest of plaintiff's son. Docket No. 57 at 14-16.

The Court finds that the undisputed facts demonstrate that Sergeant O'Neill did not have a reasonable opportunity to intervene, even if he did witness the use of force. It is undisputed that the amount of time that elapsed between Mr. Hernandez's alleged assault on the officers and the officers' use of force against Mr. Hernandez was approximately ten seconds. *Id*. at 6, ¶ 37. Mr. Hernandez "cites to no cases in which an officer was held liable for another officer's use of force where this use of force was sudden, unannounced, and short in duration." *See Choate v. Huff*, 773 F. App'x 484, 488 (10th Cir. 2019) (unpublished). Mr. Hernandez cites *Est. of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014), in support of his argument. Docket No. 69 at 21. However, in *Gomez*, the defendants observed the "entire use of force over a two-to-three minute period." *Gomez*, 745 F.3d at 422. Courts routinely hold that a defendant has no realistic opportunity to intervene when the use of force transpires in a matter of seconds. *See Choate*, 773 F. App'x at 488 (noting that a defendant had "no duty to intervene when 'three blows were struck in such rapid succession that [the defendant] had no realistic opportunity to attempt to prevent them'" (quoting *Fogarty*, 523 F.3d at 1164 (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988)))); *Gaudreault v.*

*Municipality of Salem, Mass.*, 923 F.2d 203, 207 n.3 (1st Cir. 1990) (holding that officer was not liable for failing to intervene where "attack came quickly and was over in a matter of seconds"); *Stevenson v. City of Albuquerque*, 446 F. Supp. 3d 806, 875 (D.N.M. 2020) (holding that defendants had no realistic opportunity to intervene when the officer struck plaintiff once "about four seconds into a ten second incident"); *Thompson v. Boggs*, 33 F.3d 847, 857 (7th Cir. 1994) (holding there was no realistic opportunity to intervene where officer tackled and cuffed plaintiff in a matter of seconds).[25]  Accordingly, because plaintiff has failed to show that Sergeant O'Neill had a realistic opportunity to intervene, the Court grants summary judgment to Sergeant O'Neill on the excessive force failure to intervene claim.

The Court next considers plaintiff's claim that Sergeant O'Neill is liable for excessive force under the integral participant doctrine.  "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).  "Personal involvement is not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him."  *Fogarty*, 523 F.3d at 1162.  Therefore, "[f]or liability under section 1983, direct participation is not necessary."  *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir.

---

[25] Alternatively, the Court finds that Sergeant O'Neill had no reasonable opportunity to intervene because Sergeant O'Neill was effectuating the arrest of plaintiff's son during the officers' use of force.  Sergeant O'Neill's body camera video clearly shows that Sergeant O'Neill handcuffed plaintiff's son at the rear of the vehicle and that plaintiff's son attempted to move towards Mr. Hernandez and the officers several times.  *See* Docket No. 57-3 at 5:01-5:55.  In the video, plaintiff's son shouts, "Hey, hey! Don't do that to my dad.  Don't do that to my dad," while pulling away from Sergeant O'Neill's hold.  *Id.* at 5:45-6:08.  Sergeant O'Neill had no realistic opportunity to intervene to prevent the officers' use of force against Mr. Hernandez when a felony arrestee was pulling away from Sergeant O'Neill's grip.

1990).  "Any official who 'causes' a citizen to be deprived of her constitutional rights can also be held liable.  The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights."  *Id*.

Mr. Hernandez argues that Sergeant O'Neill set in motion a series of events that led to plaintiff's arrest and the excessive force when Sergeant O'Neill instructed Officer Larson to "keep an eye" on plaintiff because he was rummaging for something in the vehicle.  Docket No. 69 at 22.  Mr. Hernandez argues that Sergeant O'Neill predicted that his officers would hurt plaintiff because he says in the body camera video, "If [Plaintiff] doesn't cooperate, he's going to get hurt."  *Id*.[26]  Defendants argue that plaintiff cannot demonstrate that Sergeant O'Neill acted with "the requisite knowledge to hold him liable under this theory."  Docket No. 76 at 8.

The Court agrees with defendants.  Mr. Hernandez has presented no evidence suggesting that Sergeant O'Neill set in motion a series of events that he knew or reasonably should have known would result in the use of excessive force.  Plaintiff presents no evidence that Sergeant O'Neill knew or reasonably should have known that Officer Larson and Officer Johnson would use excessive force when Sergeant O'Neill informed Officer Larson that Mr. Hernandez had been placing his hands under the passenger seat.  In response, Officer Larson positioned herself behind the middle pillar of the vehicle and watched Mr. Hernandez in the vehicle.  Docket No. 57 at 3, ¶ 13. Plaintiff presents no evidence that Sergeant O'Neill knew plaintiff would exit the vehicle

---

[26] Defendants state that the video depicts Sergeant O'Neill saying, "[h]e's going to get hurt if he doesn't cooperate."  Docket No. 76 at 5, ¶ 13 (quoting Docket No. 57-3 at 5:35).

again or that probable cause would develop to arrest plaintiff for obstruction under Colo. Rev. Stat. § 18-8-104(1)(a).  There is no evidence that Sergeant O'Neill ordered the officers to use any level of force against Mr. Hernandez.  *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1191 (10th Cir. 2001) ("plaintiffs did not show that [defendants] decided to use the SWAT team knowing that the SWAT team would use excessive force, intending to cause harm to any person, or that they instructed the SWAT team to use excessive force while conducting the April 16 raid").  The Court therefore finds that Sergeant O'Neill was not an integral participant in the excessive force.  Accordingly, the Court grants summary judgment to Sergeant O'Neill on the excessive force claim.

### C.   Third Claim – Malicious Prosecution

Mr. Hernandez was charged with felony assault against a police officer and misdemeanor assault.  Docket No. 57 at 6, ¶ 39.  Mr. Hernandez's malicious prosecution claim alleges that defendants provided false information in their police reports to establish probable cause for plaintiff's prosecution.  Docket No. 69 at 23-24.

### 1.   Constitutional Violation

To establish a claim for malicious prosecution, a plaintiff must show that: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."  *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) (citing *Novitsky*, 491 F.3d at 1258).  Malice "is any motive other than a desire to bring an offender to justice."  *Sanchez v. Hartley*, 65 F. Supp. 3d 1111, 1124 (D. Colo.

2014) (citation omitted), *aff'd in part*, 810 F.3d 750 (10th Cir. 2016). "Falsifying or omitting evidence knowingly and intentionally, or with reckless disregard for the truth is sufficient to establish malice in the context of malicious prosecution claims." *Id*. (citations and quotations omitted); *see also Grobecker v. Grundy*, No. 13-cv-01190-MSK-KLM, 2014 WL 3593513, at *8 (D. Colo. July 18, 2014); *Vazquez*, 2019 WL 2602523, at *11.

Defendants argue that Mr. Hernandez's malicious prosecution claim fails because (1) there was probable cause to arrest and prosecute Mr. Hernandez for assault and (2) there is no evidence of malice. Docket No. 57 at 17; Docket No. 76 at 10. Mr. Hernandez argues that there was no probable cause to prosecute him. Docket No. 69 at 24. Mr. Hernandez asserts that defendants acted with malice as evidenced by their statements at the scene of plaintiff's arrest. *Id*. For example, Mr. Hernandez asserts that Officer Larson can be seen laughing on the body camera video after plaintiff's arrest.[27] *Id*. at 10, ¶ 15. Mr. Hernandez states that after the use of excessive force, Officer Johnson can be heard in the body camera video stating, "well now your face can hurt too!" *Id*. at 10-11, ¶ 23. Mr. Hernandez argues that Sergeant O'Neill told

---

[27] Mr. Hernandez does not state when the video depicts Officer Larson laughing. Mr. Hernandez did not submit the video of Officer Larson laughing, but rather submitted a screenshot of the video. *See* Docket No. 69-10. The screenshot appears to be a screenshot of Sergeant O'Neill's body camera video because the screenshot contains the same body camera number, X81237516, in the top right corner as Sergeant O'Neill's video. *Compare id. with* Docket No. 57-3. The timestamp in the top right corner of the screenshot is 22:18:57, which appears to be at least twelve minutes after the officers arrested Mr. Hernandez. *See* Docket No. 69-10, Docket No. 57-3. The Court finds that Mr. Hernandez has not shown a disputed issue of fact regarding the cause of Officer Larson's laughter. The mere fact that Officer Larson was laughing at the scene of the incident over twelve minutes after plaintiff's arrest does not provide evidence of malice for Mr. Hernandez's malicious prosecution claim.

Officer Johnson that plaintiff and his son were "assholes." *Id*. at 11, ¶ 24. Furthermore, Mr. Hernandez asserts that Officer Larson and Officer Johnson included false information in their police reports. *Id*. at 23-24. Defendants argue that the officers' laughter had nothing to do with Mr. Hernandez because the officers were laughing at an unrelated comment made by the fire department. Docket No. 57 at 19.

The Court previously found that there are genuine disputes of material fact regarding whether the officers had probable cause to arrest Mr. Hernandez for assault. Viewing the facts in the light most favorable to Mr. Hernandez, there was no probable cause to arrest or prosecute him for assault. As a result, Mr. Hernandez has raised a genuine dispute of material fact on the third element of his malicious prosecution claim.

The Court finds that Mr. Hernandez has provided evidence indicating that Officer Larson and Officer Johnson acted with malice. Officer Larson's officer statement asserts, "I then observed Hernandez Sr. turn his shoulders open towards Officer Johnson. Hernandez Sr. swung his right leg back to gain momentum and intentionally struck Officer Johnson in the groin with his knee. In the process of doing so, he kicked me in my left shin causing me pain." Docket No. 69-14 at 2. Officer Johnson's officer statement asserts that Mr. Hernandez "spun slightly and delivered a hard knee strike directly to my groin, causing severe pain." Docket No. 69-15 at 1. Viewing the evidence in the light most favorable to Mr. Hernandez and assuming that Mr. Hernandez did not kick either officer, Mr. Hernandez has provided sufficient evidence suggesting that Officer Larson and Officer Johnson falsified their officer statements either intentionally or with reckless disregard for the truth. If Mr. Hernandez never assaulted either officer, then Officer Larson and Officer Johnson acted, at minimum,

with reckless disregard for the truth by including statements in their reports that plaintiff kicked Officer Larson and Officer Johnson.  Accordingly, Mr. Hernandez's version of events, if true, is sufficient to establish that Officer Larson and Officer Johnson acted with malice.  *See Sanchez,* 65 F. Supp. 3d at 1124; *Vazquez*, 2019 WL 2602523, at *11.  As a result, the Court finds that Mr. Hernandez has established a claim for malicious prosecution against Officer Larson and Officer Johnson.

However, the Court finds that Mr. Hernandez has provided no evidence suggesting that Sergeant O'Neill acted with malice.  Plaintiff argues that Sergeant O'Neill told Officer Johnson that plaintiff and his son were "assholes."  Docket No. 69 at at 11, ¶ 24.  Yet, Sergeant O'Neill made this comment before Mr. Hernandez's arrest when Mr. Hernandez and plaintiff's son were still seated inside their vehicle.  *See* Docket No. 57-3 at 4:43-4:49.  Mr. Hernandez provides no legal authority holding that a stray remark before an arrest, such as calling a person an "asshole," is sufficient to establish malice for purposes of a malicious prosecution claim.  Mr. Hernandez provides no other evidence suggesting that Sergeant O'Neill acted with malice.[28]  Accordingly, the Court finds that Sergeant O'Neill is entitled to summary judgment on the malicious prosecution claim because Mr. Hernandez has failed to put forth any evidence that Sergeant O'Neill acted with malice.  *See Bausman*, 252 F.3d at 1115.

---

[28] Sergeant O'Neill's officer statement does not include any statements that Mr. Hernandez assaulted Officer Larson or Officer Johnson.  *See* Docket No. 69-9.  Mr. Hernandez admits that Sergeant O'Neill testified that he did not witness Mr. Hernandez assault either officer.  Docket No. 69 at 8, ¶ 36 (citing Docket No. 69-1 at 24, 89:6-8).

## 2. *Clearly Established*

Mr. Hernandez argues that *Wilkins*, 528 F.3d at 805, clearly establishes that "false evidence cannot contribute to a finding of probable cause." Docket No. 69 at 24. Mr. Hernandez also argues that the Tenth Circuit in *Wilkins* recognized that it "has long been clearly established that knowingly arresting a defendant without probable cause, leading to the defendant's subsequent confinement and prosecution, violates the Fourth Amendment's proscription against unreasonable searches and seizures." *Id*. at 24-25 (quoting *Wilkins*, 528 F.3d at 805). In their motion and reply, defendants do not argue that the law is not clearly established.

Construing the facts in the light most favorable to plaintiff, a jury could reasonably find that Mr. Hernandez did not assault Officer Larson or Officer Johnson and that, instead, the officers included false statements in their reports about the alleged assault. It is clearly established that an officer cannot knowingly use false information to create the grounds for probable cause. *See, e.g., Wilkins*, 528 F.3d at 805 ("it was clearly established that false evidence cannot contribute to a finding of probable cause"); *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) ("It is a violation of the Fourth Amendment for an arrest warrant affiant to 'knowingly, or with reckless disregard for the truth,' include false statements in the affidavit." (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)); *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004) ("No one could doubt that the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth, was firmly established as of 1986, in the context of information supplied to support a warrant for arrest."). Assuming that Mr. Hernandez did not assault either officer, the Court finds that plaintiff has shown that Officer Larson's

and Officer Johnson's conduct violated his clearly established rights.  *See Vazquez*, 2019 WL 2602523, at *10 (denying qualified immunity where "a jury could reasonably find that Plaintiff did not strike Officer Andersen, and that, instead, Officer Andersen fabricated the alleged assault to justify his arrest of Plaintiff").  As a result, Officer Larson and Officer Johnson are not entitled to qualified immunity on the malicious prosecution claim.

IV.    **CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 57] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that plaintiff's first claim for unlawful detention and arrest is **DISMISSED with prejudice** against all defendants.  It is further

**ORDERED** that plaintiff's second claim for excessive force is **DISMISSED with prejudice** only against defendant Sergeant O'Neill.  It is further

**ORDERED** that plaintiff's third claim for malicious prosecution is **DISMISSED with prejudice** only against defendant Sergeant O'Neill.  It is further

**ORDERED** that Sergeant O'Neill is terminated from this case.


DATED September 19, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge